IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JONATHAN PAUL SIKES,                    §
                                        §
                Petitioner,             §
                                        §
v.                                      §        Civil Action No. 4:16-CV-244-O
                                        §
LORIE DAVIS, Director,                  §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,     §
                                        §
                Respondent.             §

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Jonathan Paul Sikes, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

Petitioner was charged with four counts of aggravated sexual assault of a child and two counts of indecency with a child in Tarrant County, Texas, Case No. 0993572D. Clerk's R. 2, ECF No. 12-14. On December 10, 2009, following a jury trial, the jury found Petitioner guilty on all counts and, the next day, assessed his punishment at 12 years' confinement and a $2,000 fine on each count of aggravated sexual assault of a child and 5 years' confinement and a $1,000 fine on each count of indecency with a child. *Id.* at 220-22, 231-36. The trial court ordered that the sentences be served consecutively. *Id.* at 240-57.

The evidence at trial was summarized by the state appellate court as follows:

The complainant, K.S., described sexual abuse that began when [Petitioner], her half-brother, was sixteen years old. Because [Petitioner] was a juvenile until his seventeenth birthday, the jury was instructed that they could convict only of offenses that [Petitioner] committed on or after his seventeenth birthday. At trial, K.S. testified that one night when she was ten and [Petitioner] was sixteen, she got up in the middle of the night to get some water from the kitchen, passing the living room on the way, and then returned to her room. [Petitioner] came into her room and told her to come into the living room with him. When K.S. went into the living room, she saw that [Petitioner] was watching "porn." [Petitioner] left the room for a while, returned, and then eventually moved to sit next to K.S. on the couch. K.S. testified that [Petitioner] began to "fondle with [her] vagina," then took off her clothes, and "start[ed] to have intercourse with [her]."

K.S. testified that after that occasion, she had sex with [Petitioner] on "[a]verage two to three times a month." When asked if she remembered "any other specific instances of what he would do to [her]," she testified that in addition to vaginal sex, they had anal sex "multiple times" and that with respect to oral sex, "hi[s] contacting his penis to [her] mouth" happened "about five times" and "hi[s] using his mouth on [her] vagina" happened about the same number of times.

K.S. also testified that she woke up one night with [Petitioner] on top of her and holding a knife to her throat, telling her that if she told anyone what was going on, he would kill her. When K.S. was thirteen, [Petitioner] moved out of the house.

In the spring of 2005, when K.S. was a freshman in high school, she told her friend L.A. about what had happened, and L.A. told the school counselor. CPS was contacted, and K.S. gave a statement to CPS in June 2005.

The indictment reveals that [Petitioner] was born September 13, 1984. The indictment charges (1) that [Petitioner] committed sexual assault by penis-to-female-sexual-organ contact, penis-to-anus contact, mouth-to-female-sexual-organ contact, and penis-to-mouth contact against K.S. and (2) that he committed indecency with a child under the age of seventeen years by touching her breast and "by touching any part of [her] genitals." All the indicted acts were alleged to have occurred on or about May 1, 2003.

During trial, over [Petitioner]'s objection, the trial court admitted into evidence a letter that he had written to his father after his arrest. In the letter, [Petitioner] stated, "I know that I really hurt you in the past," and "I truely [sic] am sorry."

Mem. Op. 2-4, ECF No. 12-3.

Petitioner appealed his convictions, but the appellate court affirmed the trial court's judgments, the Texas Court of Criminal Appeals refused his petition for discretionary review, and the United States Supreme Court denied writ of certiorari. Docket Sheet 1-2, ECF No. 12-2. Petitioner also filed a postconviction state habeas-corpus application challenging his convictions, which was denied by the Texas Court of Criminal Appeals without written order. Action Taken, ECF No. 12-37.

## II. ISSUES

Petitioner's grounds for relief are multifarious and are addressed as thoroughly as practicable. They fall within the following general categories:

(A)    the trial court erred and abused its discretion in various respects (grounds one, four, and ten);

(B)    he is actually innocent of all counts (ground two);

(C)    he was denied the effective assistance of trial counsel (ground three);

(D)    he was denied a speedy trial (ground five);

(E)    the evidence is insufficient to prove the elements of each offense (ground six);

(F)    he was placed in double jeopardy in two instances (ground seven); and

(G)    he was denied his right to a unanimous jury verdict (grounds eight and nine).

Pet. 6-7D3, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that the petition is not barred by successiveness, the statute of limitations, or a failure to exhaust state court remedies. Resp't's Ans. 7, ECF No. 16.

## IV. DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law" in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2004).

## A. Trial Court Error

Under his first, fourth, and tenth grounds, Petitioner claims that the trial court erred and abused its discretion by (1) allowing the state to present extraneous offense evidence of his past juvenile offenses involving the same complainant during the guilt/innocence phase of his trial; (2) verbally ordering his sentences to run consecutively without signing the written order at the time of oral pronouncement and failing to enter a proper cumulation order listing the sentences to be served consecutively in sequence; (3) denying his only motion for a continuance "based upon the emergence of Andrew Bennett and Kimberly Sikes Bennett" as new material-fact witnesses and due to his attorney's personal illness; (4) failing to ensure that Petitioner signed the court's certification of his right to appeal; (5) failing to grant the defense motion to quash the indictment; (6) failing to have Petitioner sworn in until after he was arraigned; and (7) failing to provide case law supporting defense counsel's contention that the letter written by Petitioner's father was inadmissible based upon a confrontation clause violation. These claims do not warrant federal habeas relief.

Petitioner asserts that the trial erred and abused its discretion by allowing the state to present extraneous offense evidence of his past juvenile offenses involving K.S. during the guilt/innocence phase of his trial. Pet. 6-6A1, ECF No. 1. A state court's evidentiary rulings are not inherently suspect and are generally not cognizable on federal habeas review of a state conviction. *See Estelle v. McGuire,* 502, U.S. 62, 67 (1991); *Wood v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007); *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1983). A federal habeas court will disturb state court evidentiary rulings on habeas review only if they render the trial fundamentally unfair. *Payne v. Tennessee,* 501 U.S. 808, 825 (1991). The admission of extraneous offense evidence does not violate due process if the state "makes a strong showing that the defendant committed the offense

and if the extraneous offense is rationally connected with the offense charged." *Wood,* 503 F.3d at 414. Assuming the jury believed the state witnesses' testimony, and especially K.S.'s account of the abuse, the state made a strong showing that Petitioner committed the offenses. And, Petitioner's sexual abuse of K.S. as a juvenile bears a rational relationship to the offenses charged. As such, Petitioner cannot demonstrate that his trial was rendered fundamentally unfair as a result of admission of the evidence.

Petitioner asserts that the trial court erred and abused its discretion by verbally ordering his sentences to run consecutively without signing the written order at the time of oral pronouncement and failing to enter a proper cumulation order listing the sentences to be served consecutively in sequence. Pet. 6A1, 7, 7B1, ECF No. 1. Article 42.08 of the Texas Code of Criminal Procedure provides, in relevant part:

> When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction. . . . [I]n the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases, and sentence and execution shall be accordingly . . . .

Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2017).

The record reflects that on December 11, 2009, after the jury's verdicts as to punishment were read, the state moved the trial court to run the sentences consecutively. Reporter's R., vol. 9, 115-18, ECF No. 12-12. The trial court granted the motion, and such was reflected in the court's written judgments entered on December 15, 2009. Clerk's R. 240, 243, 246, 249, 252, 255, ECF No. 12-14. The statute contains no requirement, and the Court finds no authority to support Petitioner's

6

claims, that the written judgments must be signed and entered on the *same* date as oral pronouncement of the sentence or must list the sentences in sequence corresponding to the order of counts. Nevertheless, the misapplication of state law and state procedural rules is not cognizable in a federal habeas proceeding unless the petitioner can establish that the error deprived him of a fair trial. *See Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir.1999); *Ables v. Scott,* 73 F.3d 591, 592 n.2 (5th Cir. 1996) (quoting *Johnson v. Beto,* 383 F.2d 197, 198 (5th Cir. 1967)); *Pringle v. Beto,* 424 F.2d 515, 516 (1970). Petitioner makes no such showing.

Petitioner asserts that the trial court erred and abused its discretion by denying his only motion for a continuance "based upon the emergence of Andrew Bennett and Kimberly Sikes Bennett" as new material-fact witnesses and based upon his attorney's illness. Pet. 6A1, 7, ECF No. 1; WR-79,134-02 Clerk's R. 7-8, ECF No. 12-38. The record reflects that defense counsel filed a motion for a continuance on December 7, 2009, the day before trial was to commence, and that, after hearing argument, the trial court denied the motion. Reporter's R., vol. 5, 6-19, ECF No. 12-8; Clerk's R. 159-60, ECF No. 12-14. Petitioner's first allegation based on surprise evidence involves a state court evidentiary ruling, and Petitioner fails to establish that the trial court's denial of the motion rendered his trial fundamentally unfair or prejudiced him in any way. Both witnesses were present and available to testify at trial. Reporter's R., vol. 8, 18, ECF No. 12-11. The second allegation involves the state court's application of state law concerning the grant or denial of a motion for continuance, however, as previously noted, the misapplication of state law and state procedural rules is not cognizable in a federal habeas proceeding unless the petitioner can establish that the error deprived him of a fair trial. Petitioner makes no such showing. Counsel was present throughout the duration of Petitioner's trial and nothing in the record indicates that counsel was

7

hampered in any way due to illness.

Petitioner asserts that the trial court erred and abused its discretion by failing to have him sworn in until after he was arraigned and to ensure that he signed the court's certification of his right to appeal. Pet. 7B1, ECF No. 1. Again, the misapplication of state law and state procedural rules is not cognizable in a federal habeas proceeding unless the petitioner can establish that the error deprived him of a fair trial. Petitioner makes no such showing.

Petitioner asserts that the trial court erred and abused its discretion by failing to grant the defense motion to quash the indictment "as the application paragraph of the indictment failed to track the outcry allegations; allegations by State that alleged illegal conduct of Petitioner in 2003, when he was an adult, not contained within the outcry allegations made by [K.S.]." *Id.* at 7B1. The indictment alleged that the acts of sexual abuse occurred on or about May 1, 2003, when Petitioner was 17 years of age or older. At the motion to quash/motion to suppress hearing, defense counsel argued that the allegations in the indictment occurred when Petitioner was under 17 years of age based on K.S.'s outcry and Petitioner's confession and that the conduct should have been charged in juvenile court. Reporter's R., vol. 2, 8, ECF No. 12-5. The trial court denied the motion to quash, stating:

> September 13, 2001, would've been the defendant's 17th birthday. So I think what the State has got to prove is conduct as an adult occurring after September 13th, 2001, but before the return of the indictment, September 28 of 2005. So I think that's what they're going to have to prove.
>
> The date of May 1st 2003 alleged in the indictment, I think appears to give proper notice of the offense charged. But I understand both sides' discussion of the alleged conduct as a juvenile. But I think this indictment sufficiently puts the defendant on notice of what he's charged with as an adult, if I am making myself clear to both sides.

*Id.* at 14.

The validity of a state indictment is not a matter for federal habeas relief "unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994); *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). However, where the highest state criminal court has held, expressly or implicitly, that the indictment is sufficient under state law, the federal habeas inquiry is at an end. *Alexander v. McCotter,* 775 F.2d 595, 598–99 (5th Cir. 1985). The Texas Court of Criminal Appeals denied Petitioner's state habeas application raising this claim without written order, thus this Court may presume that that court has implicitly held that the indictment is sufficient.

Finally, Petitioner asserts that the trial court erred and abused its discretion by failing to provide case law supporting defense counsel's contention that the letter he wrote to his father, who was deceased at the time of trial, was inadmissible based on a confrontation clause violation and by admitting the letter into evidence. The first allegation is frivolous. The claim is conclusory and lacks any legal basis. Respondent asserts the second allegation is procedurally barred. Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997).

Petitioner raised this claim on appeal, but the state appellate court determined that the claim was forfeited by Petitioner's failure to make a contemporaneous objection each time the letter was

offered. Mem. Op. 13-14, ECF No. 12-3. The state court clearly relied upon a firmly established and regularly followed state procedural rule to deny the claim. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996); *Ex parte Crispen,* 777 S.W.2d 103, 105 (Tex. Crim. App. 1989) (explaining its adherence to the contemporaneous-objection rule). *See also Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir. 2004) (recognizing that the Texas procedural rule as stated in *Ex parte Gardner* as being "firmly established" and "an adequate state ground capable of barring federal habeas review"); *Dowthitt v. Johnson,* 230 F.3d 733, 752 (5th Cir. 2000) (providing that the Texas contemporaneous-objection rule, which requires a timely objection to preserve error for appeal, is strictly and regularly applied, and is therefore an adequate state procedural bar to federal review). Accordingly, federal habeas review of the claim is barred unless Petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[–*i.e.,* that he is actually innocent of the offense for which he was convicted]." *Coleman,* 501 U.S. at 750.

Toward that end, Petitioner asserts that trial counsel was ineffective by not requesting a running objection to admission of the letter. Pet'r's Reply 4-8, ECF No. 22. The record reflects that counsel objected to the letter's admission on several legal theories at the time the state first offered it into evidence and that the trial court overruled the objections. Reporter's R., vol. 7, 87-88, ECF No. 12-10. Counsel did not further object when the state asked K.S.'s mother to read the letter for the jury. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland .v Washington,* 466 U.S. 668, 687 (1984). Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

Even assuming deficient performance, Petitioner fails to demonstrate prejudice. The letter, as read by K.S.'s mother at trial, provides (all punctuation and/or grammatical errors are in the original):

> To Dad: All I really want to say is that I am sorry for all the harm that I have caused everyone. I here in jail since July 20th, and to tell you the truth, I have found God in here. I am working a study on John right now. I pray to God that I could have the strength to change. I pray to God that I can really change. There is one verse in -- there is one verse that inspired me is Philippians 4: 13: "I can do all things through Christ who strengthens me." I memorized Psalms 1:46. . . . I have been bless in here and meet people that really opened my eyes. I thank God every day that I can read his Word. I knew that I can't live without Jesus. I just wanted to let you know that -- know how I feel. If I hear no response back, then I understand. I wouldn't want to talk to me either. I know that I really hurt you in the past. Well, God is letting me know some pain in my heart now. It took almost five months to figure out what to say. A really I still don't. I truly am sorry. If you don't say nothing back, then I understand. I just got my faith in God, and he will direct me wherever he wants me to go. God is number one in my book now. I want to say that I love you and everyone that I have hurt. I will pray for you that y'all do good in God's will. I am not just saying this because I am in jail. I really changed with God's Word. God bless you, Father, and your household. May good things come to you. Love always, Jonathan.

Reporter's R., vol. 7, 89-90, ECF No. 12-10 & vol. 10, State's Ex. 6.

Petitioner fails to demonstrate that, given the content of the letter, is it reasonably likely that the result of his trial would have been different if counsel had lodged a running objection. The letter is nonspecific and could be construed as an apology for any number of past transgressions by Petitioner. Petitioner makes no showing of prejudice in order to constitute cause to excuse the procedural default. Nor does he present any new, reliable evidence that was not prsented at trial to make a colorable showing of actual innocence. *See House v. Bell,* 547 U.S. 518, 537 (2006). Therefore, the claim is procedurally barred from the Court's review.

**B. Actual Innocence**

Under his second ground, Petitioner claims he is actually innocent in light of the absence of any physical evidence of "anal or genital trauma," K.S.'s inconsistent statements to the various individuals involved, and K.S.'s mother's animus toward Petitioner and his father. Pet. 6, 7B1, ECF No. 1. The United States Supreme Court has not yet resolved whether a habeas petitioner may be entitled to habeas relief based on a freestanding actual-innocence claim. *See McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013). However, Fifth Circuit precedent precludes consideration of such a claim. *In re Swearingen,* 556 F.3d 344, 348 (5th Cir. 2009). Consequently, this claim is not cognizable on federal habeas review.

**C. Ineffective Assistance of Counsel**

Under his third ground, Petitioner claims he received ineffective assistance of trial counsel based on counsel's following acts or omissions:

(a)     failing to file a verified motion for community supervision;

(b)     allowing the state to mischaracterize him as a street gang member;

(c)     failing to properly prepare and support her motion to quash the indictment with an affidavit;

(d)     failing to obtain funds from the court for an expert witness;

(e)     failing to subpoena Billie Perkins, a material-fact witness;

(f)     failing to impeach K.S. with her inconsistent statements to the individuals involved;

(g)     failing to properly object to and support her argument that the testimony of the state's expert witness was read from a report;

(h)     failing to create a bill of exception concerning the state's expert witness's testimony being admissible under of the hearsay objections;

(i)     failing to be prepared to support her argument that flight is not necessarily an indication of guilt;

(j)     failing to object to Petitioner's being prosecuted in violation of double jeopardy;

(k)     failing to request that the trial court compel the state to elect which conduct it intended to

rely upon in support of each count alleged in the indictment; and

(l)     failing to request a running objection to the evidence being presented by the state in the punishment phase of his trial.

Pet. 7-7A2, ECF No. 1.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland*, 466 U.S. at 688; *Anders v. California*, 386 U.S. 738, 744 (1967). As previously noted, to establish ineffective assistance of counsel a petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. The Supreme Court recently emphasized in *Harrington v. Richter* that—

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000) (emphasis in original)).

Accordingly, it is necessary only to determine whether the state courts' adjudication of Petitioner's ineffective assistance claims is contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner was represented at trial by Lisa Hoobler and Ray Hall Jr. He raised his ineffective-assistance claims in his state habeas application, and the state habeas court conducted a hearing by affidavit. Hoobler responded to Petitioner's allegations as follows (all spelling, punctuation, and/or grammatical errors are in the original):

**Ground Three:**

**[PETITIONER] COMPLAINS HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.**

**Ground Three (a):**

**[Petitioner] complains that trial counsel's was deficient in failing to file a verified motion for community supervision:**

Counsel did file a verified motion for community supervision, a copy of which is contained in the C.R. at 211.

**Ground Three (b):**

**Counsel allowed the State to mischaracterize [Petitioner] as a street gang member:**

Counsel did not allow the state to characterize [Petitioner] as a gang member.

**Ground Three (b) [miss numbered by [Petitioner]]:**

**Counsel was ineffective for failing to be prepared and acquainted with the discovery materials, as well as continuing Brady disclosures:**

Counsel was prepared and familiar with all discovery materials and Brady disclosures made by the state.

**Ground Three (c):**

**Counsel was ineffective for failing to properly prepare and support her motion to quash the indictment, as counsel failed to have affidavit in support of motion filed at the time court heard and denied defense motion to quash.**

Counsel prepared, supported and filed a proper Motion to Quash. The Motion was concurrently heard and ruled on with the Motion to Suppress. C.R. at 68-78. The Court delineates its findings on the Motion to Quash in its Findings. C.R at 78-81. Specifically, the Court addresses the [Petitioner]'s age at the time of offense but finds it is a question of fact for the jury to decide.

An Affidavit was not appropriate support for the Motion to Quash, nor is it required.

**Ground Three (d):**

**Counsel was ineffective for failing to obtain funds from the court for expert witness in sexual abuse case, i.e., a forensic psychologist to assist the defense in choosing a jury, provide rebuttal testimony to state's expert witness and interview the [Petitioner] and conduct whatever psychological testing indicated in support of the defense to show jury [Petitioner] was not a sexual predator:**

Counsel is unaware of any forensic testing that can prove one is not a sexual predator. [Petitioner] was not accused of being a sexual predator. Counsel does not believe a forensic psychologist could have assisted in jury selection or provided relevant rebuttal testimony.

**Ground Three (e):**

**Counsel was ineffective for failing to subpoena a material fact witness, Billie Perkins. . . . :**

Counsel had no need to subpoena Billie Perkins. Billie Perkins was willing to testify and did so at both phases of trial.

**Ground Three (f):**

**Counsel was ineffective for failing to impeach the CW with her original outcry statements to her friend and school counselor ... :**

Counsel did impeach the complaining witness with her statements. R.R. at 54-70.

**Ground Three (g):**

**Counsel was ineffective for failing to properly object and support her argument that the testimony of State's witness, Dr. Coffman, who testified by reading a report he had prepared and provided to the state in anticipation of testifying in this case on behalf of the state:**

[Petitioner] fails to actually state a complaint that can be answered. If [Petitioner] meant to complain that counsel failed to object to Dr. Coffman testifying from her notes, then that is incorrect. Counsel did object and was overruled. R.R. at 208.

**Ground Three (h):**

**Counsel was ineffective for failing to create a Bill of Exception concerning Dr. Coffman's testimony being admissible under one of the hearsay objections:**

Counsel does not know why she would need to create a Bill of Exception to testimony that falls under a hearsay exception. Counsel did properly object to all

objectionable testimony.

**Ground Three (i):**

      **Counsel was ineffective for failing to be prepared by having the supporting case law available to present to the court in support of her argument upon request for same by the trial court that flight is not necessarily an indication of guilt in all instances. . . . :**

      Counsel was prepared and argued that any evidence of flight was inadmissible. Counsel's objection to the State's offer was sustained and no such evidence was admitted. R.R. at 14.

**Ground Three (j):**

      **Counsel was ineffective for failing to object to [Petitioner] being prosecuted in violation of double-jeopardy, as Counts I and II allege the same conduct constituting the same offense:**

      Counsel did not fail to object that Counts I and II are double jeopardy. Further, they are not double jeopardy because there was ample testimony that the jury could have found that two separate offenses occurred.

**Ground Three (k):**

      **Counsel was ineffective for failing to request the Court compel the State to elect which conduct the state intended to rely upon in support of each specific count alleged in the indictment:**

      Counsel did not object because that is not the proper characterization of the State's burden. Further, the charge did not allow for a non-unanimous verdict.

**Ground Three (l):**

      **Counsel was ineffective for failing to request a running objection to the evidence being presented by the State during the punishment phase of the trial**

Counsel did not request a running objection at punishment because it would be improper to make a running objection to all of the State's evidence.

## SUMMARY

[Petitioner]'s complaints are extremely generalized and mostly pertain to what he believes to be the facts of the case. Most of [Petitioner]'s complaints fail to address actions or omissions that have any basis in the law. The numbered paragraphs above address each allegation as complained of, however, in order to assist the court I have added the following.

[Petitioner] fails to mention that counsel filed a Motion to Suppress the videotaped confession on Nov. 3, 2006, which was heard on May 30, 2007 and taken under advisement until Oct. 30, 2009. The Court withheld its ruling for 17 months but finally granted the Motion. [Petitioner] fails to mention that he absconded while on bond for more than a year. Any trial delay was not the fault of defense counsel.

Counsel raised the issue of transfer to juvenile court in the Motion to Quash. I did discuss the ruling with [Petitioner] and explained that the jury would have to decide if in fact he was a minor at the time of any of the offenses. I also very clearly explained that for the jury to be told that he committed an offense as a minor he would have to make an admission of conduct. To be clear, there were no juvenile adjudications and no prior crimes introduced at guilt innocence.

[Petitioner] told me he was not guilty of any of the acts complained of, therefore, my strategy was not to make any admissions. The State never alleged that [Petitioner] was a minor at the time of any of the offenses.

[Petitioner] now states that I should have hired an expert that could prove he is not a sexual predator. I did consider a consulting expert prior to trial and did some research. I did not find anything that fit my client's version of events or that did not come with more risk than benefit. After discussion with my client, we ruled out opening the door to his mental health.

I believe that [Petitioner] did not properly state his complaint as to punishment evidence. I think he meant to say that I should have objected to previously admitted evidence. The overall goal in the punishment phase was to humanize my client; not to deny responsibility, so we could achieve the lowest

sentence possible. In keeping with that goal, I did not want to make objections that would seem purely argumentative to the jury.

Further, the only potentially objectionable evidence was his letter to his father. The jury already considered it at guilt innocence. Also, it was helpful as mitigation. Showing remorse tends to help lower the sentence. The letter's real relevance was whether it tended to show guilt. It did not make the crimes worse in any way and therefore, I did not see it as harmful. On the contrary, I believed calling attention to it by objection would appear argumentative with the jury's verdict and hurt my client.

I worked very hard preparing [Petitioner]'s case and I spent a lot of time communicating with him. I do not believe I was ineffective in any way. I believe my defense was successful based on the low sentence arrived at by the jury. [Petitioner] only received 12 years on the first four counts and 5 on the last. I gave him the best possible defense despite him leaving the state and not communicating with me until his return to custody.

WR-79,134-02 Clerk's R. 55-60, ECF No. 12-38.

Ray also filed an affidavit, in which he avers (all spelling, punctuation, and/or grammatical errors are in the original)—

Ground Three: [Petitioner] complains that he was denied his constitution right to effective assistance of counsel at trial in violation of the Sixth and Fourteenth Amendments

(a)     Defense counsel filed a Motion For Community Supervision in the case. Counsel also called [Petitioner]'s grandmother as a witness to demonstrate that he was probation eligible. Defense counsel also called [Petitioner]'s grandfather, Rick Sikes, who testified that if [Petitioner] was given probation he would allow [Petitioner] to reside in his home. Attached hereto as Exhibit "A" is the verified Motion For Community Supervision.

(b)     During the guilt/innocence phase of the trial, the Jury was instructed to disregard a statement made by the complaining witnesses' mother. Trial counsel objected, requested for the jury to be instructed to

19

disregard and moved for a mistrial. This trial counsel has not seen an email regarding any investigation as to whether or not [Petitioner] was involved with a gang. It is highly doubtful that there was ever an investigation by the County Jail to determine whether or not [Petitioner] was involved in a gang.

(b)     Counsel was prepared for trial and well acquainted with all of the discovery and Brady disclosures. Defense counsel cross-examined the State's witnesses on these matters and called our own witnesses. Objections were made when appropriate and defense counsel did everything possible to assist the [Petitioner] at trial.

(c)     I was not involved with the Motion To Quash Indictment. This motion was filed prior to this trial counsel being brought onto the case by Lisa R. Hoobler. She argued the Motion To Quash.

(d)     I was not part of this case when the items contained in this allegation would have needed to be done. However, we did not need a forensic psychologist to assist in jury selection. I believe the State's experts were cross examined properly. Since the alleged victim did not have an examination for over a year after the alleged incidents, I do not believe an expert would have been able to add to anything at the time of trial. There is no testing available to determine whether or not someone is a sexual predator. A person is classified as a sexual predator by their conduct, not a test.

(e)     Defense counsel was not ineffective for failing to subpoena a material fact witness, Billie Perkins, [Petitioner]'s grandmother. In the [Petitioner]'s own allegations, he references her testimony at the time of trial.

(f)     Defense counsel cross-examined the complaining witness and uncovered all of the inconsistencies. The inconsistencies were brought out in the complaining witnesses' testimony as well as her friends' testimony along with everyone else that testified. These inconsistencies were also argued in closing argument.

(g)     All proper objections were made to Dr. Coffman's report and testimony of said witness. The Judge allowed his testimony under

medical diagnosis purposes. Defense counsel cross-examined said witness to clarify his testimony and show that his conclusions could have come from the complaining witnesses' testimony or from other events since the alleged incidents.

(h)     Dr. Coffman's testimony was argued against and a ruling was made by the Judge. His testimony was admissible under one of the exceptions to the hearsay rule. A Bill of Exception was not necessary in this situation. The objection is in the court's record and the testimony was admissible.

(I)     Counsel was thoroughly prepared for trial and argued all applicable issues in this case. Argument was made and overruled by the court regarding this specific issue. The jury must decide whether or not to believe the argument. The fact that the [Petitioner] left the state while the case was pending and did not appear on his court date is proper for the jury to hear and/or consider.

(j)     Counts I and II do not allege the same conduct in violation of double jeopardy. The [Petitioner] does not understand the definition of double jeopardy in making this argument. The [Petitioner] had not been previously tried on either of these counts. Count I is causing the sexual organ of K.S. to contact the sexual organ of the Defendant. Count II is causing the anus of K.S. to contact the sexual organ of the Defendant. These are two different body parts touching the sexual organ of the Defendant and do not constitute double jeopardy.

(k)     Defense counsel was aware of what conduct the State was relying upon in each specific count in the indictment.

(l)     Counsel is unsure of what running objection [Petitioner] believes should have been made to the evidence presented by the State during the punishment phase of the trial. Counsel made individual objections to evidence that was inadmissible. There was no need for a running objection during the punishment phase of the trial.

*Id.* at 34-35.

Although the state habeas court reccommended dismissal of Petitioner's state habeas

application for noncompliance with the state's form requirements, the Texas Court of Criminal Appeals denied the application without written order. By doing so, the Texas Court of Criminal Appeals did not clearly and expressly deny Petitioner's claims on an independent and adequate procedural ground, and, as noted above, a denial of Petitioner's state application without written order would typically indicate an adjudication on the mertis. *See Johnson,* 568 U.S. at 298 (quoting *Richter,* 562 U.S. at 99). Thus, under these circumstances, this Court presumes that the state court made findings consistent with its rejection of the claims and applied the *Strickland* standard to those implied findings. *Richter,* 562 U.S. 86 at 99. Petitioner has not presented clear and convincing evidence in rebuttal. Thus, relying on the presumptive correctness of the state court's implied factual findings, and having independently reviewed Petitioner's claims in conjunction with the state court records, the state court's adjudication of the claims is not contrary to or an unreasonable application of *Strickland.*

Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous objections or motions, all of which generally do not entitle a state Petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"). A petitioner shoulders a heavy

burden to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d). A petitioner is required to demonstrate that counsel's performance, in light of the entire proceeding, was so inadequate as to render his trial unfair. *Washington v. Watkins,* 655 F.2d 1346, 1355 (5th Cir. 1981). Having reviewed the entirety of the record, counsel's performance was well within the wide range of professionally competent assistance.

### D. Speedy Trial

Under his fifth ground, Petitioner claims he was denied a speedy trial. Pet. 7C1, ECF No. 1. In support of his claim, he provides the following alleged facts:

> Petitioner complains that he was denied a speedy trial by the State, which prejudiced his ability to: (a) marshal available evidence (testimony from his father, who committed suicide before the trial, but after Petitioner's arrest), which would have supported the defense contentions that Petitioner's step-mother, [K.S.]'s mother was a drug addict, neglected her responsibility as a parent by failing to supervise her daughter ([K.S.]) and her step-son (the Petitioner) and had made it known publicly that she wanted the Petitioner, not only out of her house, but out of . . .their lives forever. The case was originally filed on September 15, 2005 and was over four years old at the time the trial in this matter actually took place. Charlotte Toner, deputy district clerk of the county testified the case had been reset thirteen times and that after Petitioner had spent two years in jail before making bond, had his bond revoked after failing to report to the adult probation department as a part of his bond requirements one time on November 18, 2008.

*Id.* (citations to the record omitted).

The Sixth Amendment guarantees every criminal accused "the right to a speedy . . . trial."

U.S. CONST. amend. VI. The right to a speedy trial is applied to the states via incorporation by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 222-23 (1967). The Supreme Court has identified four factors that should be weighed in determining whether a defendant has been denied his speedy trial right: length of delay, reason for the delay, assertion of the right by the defendant, and prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530 (1972).

Here, the record reflects that the case was filed on September 15, 2005, and that Petitioner was indicted on September 28, 2005. Reporter's R., vol. 9, 95, ECF No. 12-12; Clerk's R. 3, ECF No. 12-14. Petitioner bonded out of jail on July 25, 2007, and last reported to his community supervision officer on October 21, 2008. Reporter's R., vol. 7, 181-83, ECF No. 12-10. After Petitioner failed to report on November 11, 2008, an arrest warrant issued for his arrest on November 18, 2008. *Id.* at 183, 186. Petitioner was eventually taken into custody out of state on March 7, 2009. *Id.* at 181-88. His trial commenced on December 8, 2009, over four years later. Reporter's R., vol. 3, 8-9, ECF No. 12-6. Although the extent of the delay weighs in Petitioner's favor, he precipitated the delay by absconding to avoid prosecution for over one and a half years. *Doggett v. United States,* 505 U.S. 647, 651-52 n.1 (1992). Nor does the record suggest that the state intentionally caused the delay for the purpose of hindering the defense or otherwise gaining a tactical advantage. *See Barker,* 407 U.S. at 531.

Further, the record does not indicate that Petitioner asserted his right at any time prior to trial. In fact, as noted by Respondent, the defense filed a motion for continuance two days before trial. "[F]ailure to assert the right will make it difficult for the defendant to prove that he was denied a speedy trial." *Id.* at 532.

Finally, Petitioner fails to make an affirmative showing of actual prejudice. Prejudice may be established in three ways: (1) proof of oppressive pretrial incarceration; (2) proof of anxiety and concern of the accused; and (3) proof that the defense was impaired by the delay. *Barker,* 407 U.S. at 533. Petitioner provides no proof of oppressive pretrial incarceration other than to allege that he was confined for two years before making bond. Pet. 7C1, ECF No. 1. As to Petitioner's anxiety and concern, the Supreme Court "has suggested that living 'under a cloud of suspicion and anxiety' for four years constitutes only 'minimal' prejudice absent an effect on a defendant's trial." *Laws v. Stephens,* 536 Fed. App'x 409, 414 (5th Cir. 2013) (quoting *Barker,* 407 U.S. at 534). Finally, Petitioner asserts loss of a witness, however his assertion that his father's testimony would have been favorable to his defense is unsupported by any proof in the record and is not persuasive. In sum, on balance, the *Barker* factors do not show that Petitioner was denied his federal constitutional right to a speedy trial.

### E. Sufficiency of the Evidence

Under his sixth ground, Petitioner claims that the evidence was legally and factually insufficient to prove the elements of each offense "because the testimony comprised evidence of offenses that occurred before [he] turned seventeen years of age." Pet. 7D1, ECF No. 1. In reviewing the sufficiency of the evidence in the context of habeas corpus proceedings challenging the judgment of a state court, a federal court's review is limited to determining whether, based upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324 (1979). The court's review of the evidence is conducted in the light most favorable to the verdict. *Selvage v. Lynaugh,* 823 F.2d 845, 847 (5th Cir. 1987).

To the extent Petitioner raises a factual-sufficiency claim, the claim is not cognizable on federal habeas review. *See Woods v. Cockrell,* 307 F.3d 353, 358 (5th Cir. 2002). Acknowledging the fact that the Texas Court of Criminal Appeals had overruled the factual-sufficiency standard as a matter of state law, the state appellate court addressed Petitioner's claims under the *Jackson* standard as follows:

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

We must remember that the *Jackson* standard is not a no-evidence standard. In her concurring opinion, Judge Cochran reminds us that

Texas courts were prohibited from applying a "no evidence" standard of review to a legal-sufficiency challenge because that standard affords "inadequate protection against potential misapplication of the reasonable-doubt standard" in criminal cases. In 1989, [the Texas Court of Criminal Appeals] explained, "Adherence to the no evidence standard is now, and has been for the last decade, expressly forbidden by Jackson. It is no longer permissible to merely quote the Jackson standard and then to turn around and apply the Thompson no evidence standard as we have historically done."

[Petitioner] argues that the evidence is insufficient to prove the elements of each offense alleged in counts one through six because the testimony comprised evidence of offenses that occurred before [Petitioner] turned seventeen years of age. The State was required to prove that the offenses occurred after [Petitioner] became an adult for purposes of legal prosecution. [Petitioner] points out that K.S. described only three specific instances of "sexual contact," once when she was ten and [Petitioner] was fifteen or sixteen, ". . . one time, [K.S. and [Petitioner]] were in his room . . . ," and "one time [she] woke up . . . ." As [Petitioner] alleges, the first described incident occurred when he was clearly a juvenile, and no time frame was given for the other two events. [Petitioner] argues that consequently there was no evidence that either of those events occurred after his seventeenth birthday. [Petitioner] further states that "[w]ithout alluding to a single specific incident, [K.S.] . . . testified that after [he] turned 17 years old, he contacted his penis to her vagina [sic], contacted his penis to her anus, contacted his penis to her mouth, contacted his mouth to her vagina, touched her breasts and touched her vagina . . . [;o]ther than

[K.S.'s] conclusory statement that it happened, there is absolutely no evidence in the record that any abuse occurred after [Petitioner]'s 17th birthday."

The State argues that K.S. had told her two friends of the abuse and had confirmed it to CPS workers and to the police. K.S. told the CARE team that [Petitioner] had sexually abused her eight to ten times, beginning when she was about ten years old until she was thirteen years old. In response to [Petitioner]'s argument that K.S.'s testimony was conclusory with no additional corroborating details and insufficient because it failed to allude to a specific incident, the State points out that it is the jury who must determine the credibility of the witnesses and the weight to be given to their testimony. The law permits wide latitude in evaluating the testimony of a child witness who is the complainant in a sexual abuse case, as opposed to a capital murder case, a robbery case, a murder case, or any other case. The same latitude appears to be granted to an adult testifying about events that occurred in childhood, as in this case. Here, K.S. was nineteen years old when she testified about the events for which [Petitioner] was convicted. If the jurors determined that the evidence was sufficient to convince them beyond a reasonable doubt that the offenses occurred, the evidence is sufficient under the law.

The jury also heard testimony from two of K.S.'s friends, her school counselor, two CPS investigators, and a doctor from the CARE team describing K.S.'s report to them. Additionally K.S. testified that the assaults occurred two to three times a month after [Petitioner] turned seventeen years old until he moved out of the home when he was nineteen years old. While this testimony may seem inconsistent with her testimony that it happened only approximately ten times from the time it began, the jury alone was responsible for determining the credibility of the witnesses and resolving any conflicts in the evidence.

Additionally, as the State points out, the State is not required to plead and prove any specific date in a child sexual abuse case. The "on or about" language of the indictment allows the State to prove, without apparent regard for the evidence presented to the grand jury, any date within the statute of limitations, so long as it is anterior to the presentment of the indictment.

We hold that because current law allows such latitude in proving sexual offenses against children, as opposed to the standards applied to other offenses, the evidence is sufficient under the *Jackson* standard to support the verdicts.

Mem. Op. 4-8, ECF No. 12-3 (footnotes omitted).

In this case, the jury was the fact-finder, and it was within its sole province to assess the credibility of the witnesses and resolve any conflicts in the evidence. *See United States v. Green,* 180 F.3d 216, 220 (5th Cir.1999); *United States v. Monroe,* 178 F.3d 304, 307 (5th Cir.1999) ("it is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses"). The state courts' adjudication of the claim comports with *Jackson,* and "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact." *Pemberton v. Collins,* 991 F.2d 1218, 1225 (5th Cir. 1993) (citing *Sumner v. Mata,* 455 U.S. 591, 597 (1982)).

### F. Double Jeopardy

Under his seventh ground, Petitioner claims that, in violation of double jeopardy, his conviction for aggravated sexual assault under count one and his conviction for indecency with a child under count six "may both be proved by evidence of penis-to-female sexual organ contact." Pet. 7D2, ECF No. 1. Relying solely on state law, the state appellate court rejected this claim, stating:

> [Petitioner] argues that his conviction for aggravated sexual assault of a child in count one and his conviction for indecency with a child in count six violate double jeopardy protections. The allegation that [Petitioner] intentionally or knowingly caused K.S.'s sexual organ to contact his sexual organ, as provided in count one, and the allegation in count six that [Petitioner] did then and there intentionally with intent to arouse or gratify sexual desire engage in sexual contact by touching any part of her genitals may both be proved by evidence of penis-to-female sexual organ contact.

> The Texas Court of Criminal Appeals has held that, despite the fact that indecency, unlike sexual assault, requires evidence of intent to arouse and gratify the sexual desire of any person, "indecency with a child is a lesser-included offense of aggravated sexual assault of a child where both charges are based on the same incident." In its discussion, the Evans court referred to the earlier decision in *Ochoa v. State* and noted with approval Judge Keller's concurring opinion that discussed the double jeopardy implications of charging a defendant with two different statutes for the same incident. But because [Petitioner] did not raise his double jeopardy

complaint at the trial level, he was required to show that a double jeopardy violation was apparent from the face of the record in order to raise his complaint for the first time on appeal.

Although the indictment is not a model pleading, there is testimony of both contact and touching from which the jury could conclude beyond a reasonable doubt that after his seventeenth birthday, [Petitioner] touched K.S.'s genitals with something other than his mouth or penis.

Dr. Jamye Coffman, who was part of the CARE team that examined K.S., testified over objection to the medical history K.S. provided. In response to the question about K.S.'s statements about vaginal contact Coffman testified,

> A.    She said yes to penis contacting the vagina [sic], which she had already said, and then yes to the finger or hand contacting the vagina, and then no to any object.
>
> . . . .
>
> Q.    And when somebody says they touched my vagina or placed a penis against my vagina, does that mean her sexual organ was contacted?
>
> A.    Yes.

Because there is evidence from which the jury could conclude that, after his seventeenth birthday, [Petitioner] touched K.S.'s female sexual organ with something other than his mouth or penis (that is, his finger or hand), it is not apparent from the face of the record that the jury necessarily convicted [Petitioner] of both contacting K.S.'s sexual organ with his penis or mouth and touching her sexual organ with his penis or mouth in the same incident. Consequently, we hold that [Petitioner] has forfeited his double jeopardy complaint.

Mem. Op. 8-10, ECF No. 12-3 (footnotes omitted).

The double jeopardy clause protects against a second prosecution after acquittal, against a

second prosecution for the same offense after conviction, and against multiple punishments for the

same offense. *Ohio v. Johnson,* 467 U.S. 493, 498 (1984). Petitioner's claim implicates the latter of the three. Petitioner was convicted of aggravated sexual assault by causing K.S.'s sexual organ to contact his sexual organ on or about May 1, 2003, and indecency by engaging in sexual contact by touching any part of K.S.'s genitals on or about May 1, 2013. Clerk's R. 2, ECF 12-14. As the state appellate court explained in its memorandum opinion, under state law the "on or about" language allows the state to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment or return of the indictment and within the statutory limitations period. Mem. Op. 8, ECF No. 12-3. When an indictment alleges that some relevant event transpired "on or about" a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory limitation period. *See Garcia v. State,* 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998); *Thomas v. State,* 753 S .W.2d 688, 692 (Tex. Crim. App. 1988); *Ferrell v. State,* 968 S.W.2d 471, 473 (Tex. App.-Fort Worth 1998, pet. ref'd) (involving allegations of aggravated sexual assault of a child and indecency with a child). Under the facts of Petitioner's case, the appellate court found that there was evidence that Petitioner engaged in separate and distinct acts of contact within the relevant time period. Accordingly, he was not subjected to multiple punishments for the same incident.

### G. Unanimous Jury Verdicts

Lastly, under his ninth ground, Petitioner claims the jury charge allowed him to be convicted on non-unanimous verdicts in violation of the Texas Constitution. Pet. 7D2, ECF No. 1. "Under § 2254, federal habeas courts sit to review state court misapplications of *federal* law." *Charles v. Thaler,* 629 F.3d 494, 500-01 (5th Cir. 2011) (emphasis in original). This claim does not allege any violation of "the Constitution, laws, or treaties of the United States." An alleged violation of the

Texas state constitution is not cognizable on federal habeas review. *Fuller v. Johnson,* 158 F.3d 903, 908 (5th Cir. 1998). Petitioner did not raise a federal constitutional violation as to this claim in the state courts for exhaustion purposes, and his fleeting reference to the Sixth Amendment herein is insufficient to raise a federal claim. Appellant's Pet. for Discretionary Review 11, ECF No. 12-22; Pet. 7D3, ECF No. 1; *Wilder v. Cockrell,* 274 F.3d 255, 260 (5th Cir. 2001).

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and a certificate of appealability is DENIED.

**SO ORDERED** on this 6th day of February, 2018.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**